*In the Matter of the Petition of* H. A. EBERLE *for a Writ of Habeas Corpus.*

HABEAS CORPUS — *Petitioner, Discharged.* Where an application is made by a prisoner for his discharge upon *habeas corpus*, and the evidence fails to show the commission of any crime on the part of the petitioner, he should be discharged.

*Original Proceeding in Habeas Corpus.*

*John Muckle,* for petitioner.

*Case & Glasse,* and *J. H. Morrison,* contra.

Opinion by STRANG, C.: Sometime in March, 1889, the grand jury of Labette county, Kansas, returned to the district court of said county an indictment against H. A. Eberle, charging him with the offense of having obtained by means of false pretenses the signature of Samuel Tilton to a promissory note for $270, dated October 11, 1888, and payable on or before October 11, 1889, to the order of Dr. H. A. Eberle. Upon said indictment a warrant was issued, and the defendant not being found in the state of Kansas, a requisition was obtained and the defendant arrested on the 9th of April, 1889, in the state of Missouri, and extradited to Kansas. Afterward the defendant applied to this court for his discharge from said arrest upon *habeas corpus,* for the reason that said indictment did not charge the petitioner with any offense, which application was allowed and an order made directing his discharge, pursuant to which he was, on the 13th day of May following, discharged. Immediately upon his discharge he was rearrested upon a warrant issued by Hon. J. D. McCue, judge of the district court of Labette county, and at once reincarcerated in jail, the charge in said warrant being that the defendant on October 11, 1888, obtained the signature of Samuel Tilton to a joint note of Samuel Tilton and Elizabeth Tilton for $270, payable to Dr. H. A. Eberle on or before October 11, 1889, with interest at ten per cent. after maturity. After said last imprisonment, the petitioner applied to the

Hon. J. D. McCue, judge of the district court of Labette county, for his discharge upon *habeas corpus*, which application was refused, and petitioner remanded to the custody of the sheriff of Labette county; whereupon he again comes to this court with an application for his discharge from arrest and imprisonment, and alleges that he should be discharged for the following reasons:

*First:* Because having been extradited from Missouri upon papers that this court upon examination thereof held did not charge an offense, his arrest in the state of Missouri was illegal, his extradition unwarranted; and having been discharged, could not be rearrested in this state upon any charge until he was given time to return to the state of Missouri.

*Second:* That the charge upon which he was rearrested and is now held, is another and different offense from that upon which he was extradited, and that therefore he should, under the law, be discharged.

*Third:* That the evidence to sustain the charge against him does not show that any offense was committed.

The evidence in this matter shows that on the 11th day of October, 1888, the petitioner was at the home of Samuel Tilton, in Labette county, in company with one of Mr. Tilton's acquaintances, who introduced the petitioner to Tilton as a physician, and said he wanted to see Mrs. Tilton, who was an invalid; that after some conversation between Tilton and the petitioner, the latter was introduced to Mrs. Tilton, and proceeded to question her and examine her as to her condition, after which he informed her and her husband that she was suffering from a complication of chronic irritation of the spine, and other difficulties, and was in a pretty bad condition. He declared, however, that she could be cured; that the institute of which he was a member, the "Medical and Surgical Health Institute" of Kansas City, Missouri, could cure her; but it would take time—would take ten months; that finally he offered to enter into a contract for said institute with Tilton and wife to take her case, furnish medicine, attention and apparatus, and cure her in ten months, for $270, which proposi-

tion Tilton and wife accepted, and executed a promissory note for $270, payable to Dr. H. A. Eberle, on or before October 11, 1889, with interest at ten per cent. after maturity; that the petitioner executed a contract on the part of said institute embodying the agreement, and also containing a statement of the note made to him, and included therein the condition that the note should be null and void unless a cure was effected. The evidence also shows that during the conversation between the petitioner and Samuel Tilton, the former said they owned the building in which they were doing business in Kansas City, a picture of which was at the head of the contract given by him to the Tiltons; that he also said that the institute was doing a good business and was responsible, and he was responsible, and that he promised not to negotiate the note given him; that Samuel Tilton testified he would not have given the note if the petitioner had not said he was responsible financially, and the institute which he represented was responsible financially. The above is the substance of all the evidence presented to this court.

Three questions of more or less importance are represented in this application, but as the last is the one upon which the merits of the case must finally rest, we have concluded to confine our investigation thereto. The petitioner is charged with obtaining the signature of Samuel Tilton to a promissory note by means of false pretenses with intent to cheat and defraud Samuel Tilton. Does the evidence sustain the charge? We think not. It is said that the petitioner represented that he knew what was the matter with Mrs. Tilton, and it is alleged that he did not know what ailed her. Who knows whether he did or not? What is there in the evidence in the case that proves that he did not know what ailments, or complication of ailments, Mrs. Tilton was suffering from? We cannot gather from the evidence that he did not know. No medical testimony is offered to show that she was not suffering from the difficulties named by the petitioner. There is no medical proof that he did not properly diagnose her condition. Nor is there any medical or other evidence to show that the peti-

tioner was not a learned member of the medical profession, and fully competent to diagnose disease. It is also said the petitioner represented that Mrs. Tilton, notwithstanding the complication of diseases from which she was suffering, could be cured, and that the Medical and Surgical Health Institute which he represented could cure her in ten months. And it is alleged that such representation was false. It may have been; but who knows it was false? What is there in the evidence that establishes its falsity? The representation was that they could and would cure her in ten months, provided she took the medicine according to instructions for that period of time. But she quit taking the medicine when the period had but half expired, and her husband had the petitioner arrested and put in jail. Who knows but she would have been cured in ten months? What is there in the evidence that establishes the fact that she could not have been cured in ten months according to the petitioner's representations, which included a ten-months trial? There is no medical evidence on this point. We see nothing in these representations that justifies a criminal prosecution against the petitioner. And yet, as we read Samuel Tilton's evidence, these are the representations that induced him to sign and deliver the note, the signature to which the petitioner is alleged to have obtained. The evidence shows that the petitioner said he wanted the note to hold until the contract had been performed; and that he did not have to negotiate it, because the institute was doing a good business, and was in good shape financially. The evidence does not disclose or attempt to disclose the financial condition of the institute in October, 1888, nor the financial responsibility at that time of the petitioner. It does not show but that the institute at that time was doing a good business. The evidence upon this question is that of the witness Gates, whose evidence is so general and indefinite as to be but slightly material upon any question connected with the case, and he testifies that the first time he called at the institute was in January, 1889, and again in March after. His evidence shows that he knew very little at any time about the institute financially or

otherwise, and nothing at all about it in October, 1888. The evidence fails to show the falsity of his statements when made in October, 1888, that the institute was doing a good business, and that the institute and petitioner were then financially responsible. Nor does the evidence negative his statement that they did not have to negotiate the note. The whole statement concerning the negotiation of the note was practically a promise that he would not negotiate the note, but a promise not to do a thing in the future is not a false pretense. The important question is, what induced Samuel Tilton to sign and deliver to Dr. H. A. Eberle the note for $270? We think it was the fact that Samuel Tilton believed the statements of Dr. Eberle that he knew what ailed Mrs. Tilton, and that the institute of which he was a member could cure her in ten months, coupled with his desire to have her cured, that induced him to sign the note, and not the casual statements of the doctor as to the financial responsibility of the institute or of himself. The contract as reduced to writing and delivered to the Tiltons says nothing about the financial responsibility of the institute. Taking the evidence as a whole, we do not think it discloses a case of obtaining the signature of Samuel Tilton to the note in question by means of false pretenses. We therefore recommend that the application of the petitioner be allowed, and an order for his discharge entered.

By the Court: It is so ordered.

All the Justices concurring.